**Obermayer Rebmann Maxwell & Hippel LLP**
By:    Matthew Green, Esq. (03228-2003)
         Ivo Becica, Esq. (01240-2007)
1120 Route 73, Suite 420
Mount Laurel, New Jersey 08054
(856) 857-1413
matthew.green@obermayer.com
ivo.becica@obermayer.com
*Attorneys for Plaintiff, Sunbelt Rentals, Inc.*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **Plaintiff:** <br><br> **SUNBELT RENTALS, INC.** <br> 2341 Deerfield Drive <br> Fort Mill, South Carolina 29715 <br><br> vs. <br><br> **Defendant:** <br><br> **EQUIPMENTSHARE.COM INC.** <br> 5710 Bull Run Drive, <br> Columbia, Missouri 65201 | HON. <br><br> Case No.: <br><br><br> **CIVIL ACTION** <br><br><br> **VERIFIED COMPLAINT AND JURY DEMAND** |

Plaintiff, Sunbelt Rentals, Inc. ("Sunbelt"), by and through undersigned counsel, by way of a Verified Complaint against Defendant EquipmentShare.com Inc. ("EquipmentShare"), avers as follows:

**NATURE OF THE ACTION**

1.     This action concerns a systematic and illegal scheme perpetuated by EquipmentShare, a Sunbelt competitor, to poach high-level Sunbelt employees and knowingly encourage, aid, and abet those individuals to violate their contractual obligations to Sunbelt.

2.     Unlike Sunbelt, which has three decades of experience in the equipment rental arena, EquipmentShare is a newcomer to the industry, having only commenced its operations in 2014.  Lacking both the institutional knowledge and leadership that Sunbelt built over nearly four

decades, EquipmentShare seeks to penetrate a highly-competitive market. To do so, EquipmentShare has by devised and set into motion a scheme to poach highly-skilled management from Sunbelt to its benefits in contravention of binding non-competition clauses to which these employees are subject.

3.      To illustrate, in the last year alone, Sunbelt has initiated litigation against five former Sunbelt employees, who have not only left Sunbelt and joined EquipmentShare in a manner that violates their Employment Agreements, but who have also pilfered Sunbelt's confidential information mere weeks before joining the Sunbelt competitor. *See Sunbelt Rentals, Inc. v. Cole Taylor*, No. SU-cv-2020000265 (Ga. Super. Feb. 17, 2020) (the "Taylor Litigation"); *Sunbelt Rentals, Inc. v. Michael Wendt*, No. 20-A-0342305 (Ga. Super. May 13, 2020) (the "Wendt Litigation"); *Sunbelt Rentals, Inc. v. Michael Shifflett*, Civil Action No. 1:20-cv-02222-JMC (D. Md. July 30, 2020) (the "Shifflett Litigation"); *Sunbelt Rentals, Inc. v. Robert Gessner*, 2:20-cv-02654 (D. Kan. Dec. 23, 2020) (the "Gessner Litigation"); *Sunbelt Rentals, Inc. v. Michael Love*, 1:20-cv-017611-RMB-AMD (D.N.J. Dec. 1, 2020).

4.      Based on EquipmentShare's blatant aiding and abetting of such violative conduct, Sunbelt asserts against EquipmentShare a claim for tortious interference with contract.

5.      "Although businesses have the right to compete fairly with one another, that right does not extend to actions taken with the malicious purpose of harming a competitor's business." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1167 (3d Cir. 1993). EquipmentShare's use of devious, improper, and unrighteous means of hampering Sunbelt's business, and the effects such devious conduct has had already, demonstrates the gravity of EquipmentShare's unlawful tortious interference with contract.

OMC\4848-1969-4049.v1-3/16/21

## PARTIES

6.      Sunbelt is a corporation organized under the laws of North Carolina with its principal place of business located at 2341 Deerfield Drive, Fort Mill, South Carolina 29715.

7.      Upon information and belief, EquipmentShare is a corporation organized under the laws of Delaware with its principal place of business located at 5710 Bull Run Drive, Columbia, Missouri 65201.  EquipmentShare is a direct competitor of Sunbelt.

8.      Upon information and belief, EquipmentShare has a physical business location located at 1521 Admiral Wilson Boulevard, Camden, New Jersey, 08105.  *See* LOCATIONS, equipmentshare.com/locations (last visited Mar. 16, 2021).

## JURISDICTION AND VENUE

9.      This Court has diversity jurisdiction over all causes of action pursuant to 28 U.S.C. § 1332(a)(1), because all of the parties are citizens of different states from one another and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10.     Additionally, this Court has supplemental jurisdiction over Sunbelt's various state law claims set forth in this Complaint pursuant to 28 U.S.C. § 1367, as those claims form part of the same case or controversy as the other claims stated herein.

11.     Under New Jersey's long arm statute, which is coterminous with the due process requirements of the United States Constitution, this Court has personal jurisdiction over EquipmentShare, as EquipmentShare maintains a physical location in New Jersey and services New Jersey citizens, such that EquipmentShare's activities in this state are so continuous and systematic as to render it essentially at home in New Jersey.

12.     In addition, EquipmentShare is subject to specific personal jurisdiction in this Court because EquipmentShare's physical location in New Jersey demonstrates that EquipmentShare

purposefully directs activities in this state, such that it has purposefully availed itself of the benefits and protections of New Jersey law.   In addition, the underlying litigation relates to EquipmentShare's activities in New Jersey, and exercise of this Court's jurisdiction comports with notions of fair play and substantial justice.

13.     Venue is proper in this district because EquipmentShare operates a location in New Jersey and, thus, EquipmentShare can be "found" in this state.  *See* 18 U.S.C. § 1965(a) ("Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person . . . is found . . . ."); *see also* 18 U.S.C. § 1961(3) ("'[P]erson' includes any individual or entity capable of holding a legal or beneficial interest in property.").

14.     Venue is also proper under 28 U.S.C. § 1391, because EquipmentShare is subject to personal jurisdiction in this Court.  *See* 28 U.S.C. § 1391(b)(1) ("A civil action may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located[.]"); *see also* 28 U.S.C. § 1391(c)(2) (providing that "an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question . . . .").

## BACKGROUND FACTS

### SUNBELT'S HISTORY

15.     Sunbelt was founded in 1983 as a small rental company for general construction equipment.

4

16.     For nearly four decades, Sunbelt has worked to develop relationships with clients, open locations throughout the United States, and distinguish itself from competitors through its pricing and system management.

17.     As a direct result of its commitment to developing its business, Sunbelt is a national market leader in the extremely competitive business of renting and selling equipment, tools, climate control units, scaffolding, oil and gas equipment, and parts for use in the manufacturing, industrial, and construction industries. *See generally* SUNBELT RENTALS, www.sunbeltrentals.com (last visited Jan. 7, 2021).

18.     To conduct its business, Sunbelt utilizes a network of locations throughout the United States, which Sunbelt refers to as "Profit Centers" or "PCs." Sunbelt's PCs can be found by searching Sunbelt's website at www.sunbeltrentals.com/locations/.

19.     Presently, Sunbelt operates approximately 940 PCs, each of which are located in 46 of the 50 states.

20.     All of Sunbelt's revenue originates at its PCs and, therefore, all sales and rental activities within Sunbelt are connected to these locations.

21.     To  provide its services, Sunbelt employs a wide range of employees for positions including but not limited to: Outside Sales Representatives ("OSRs") who sell products and services in certain geographic regions; Profit Center Managers, who oversee specific Sunbelt locations; Regional Managers and Market Managers, who have responsibilities across multiple PCs in larger geographic areas; and National Account Managers and other national-level employees who interact with customers and potential customers across the United States.

22.     To properly equip its employees to succeed in the rental equipment industry, and to ensure the employees are able to cultivate strong relationships with customers, supplies, and

vendors, Sunbelt has invested substantial time and financial resources recruiting, hiring, and training its sales employees.

23.     For example, store managers and district managers often expend a considerable amount of time on "ride alongs" with sales employees to assist them in marketing and acquiring new business.

24.     Moreover, Sunbelt often provides sales employees with the opportunity to attend industry seminars, workshops, tradeshows, and other events, in an effort to assist the employees to become market leaders in the equipment rental industry.

25.     Given this significant investment, Sunbelt has a strong interest in maintaining its highly-trained and skilled workforce of sales employees—the very workforce with which EquipmentShare has interfered and exploited.

### SUNBELT'S EMPLOYMENT AGREEMENTS

26.     In order to protect its legitimate business interests, Sunbelt requires its employees, at the outset of their employment, to execute employment agreements that contain non-competition, non-solicitation, and confidentiality covenants.[1]

27.     The Employment Agreements contain two independent non-competition provisions.

28.     The first non-competition provision of the Employment Agreements is titled Paragraph 5.2.4 and provides that employees are prohibited from, directly or indirectly, engaging in competitive or substantially similar job duties within a specified "Territory" during the twelve (12) months following the employee's employment with Sunbelt.

---

[1] While some Employment Agreements contain minor differences in language, every Employment Agreement contains non-competition, non-solicitation, and confidentiality covenants.

OMC\4848-1969-4049.v1-3/16/21

29.     While the definition of "Territory" differs slightly in several Employment Agreements, Sunbelt's standard contract defines the term to include the geographical region within fifty (50) miles of **any** Sunbelt PCs in which, **or in connection with which**, the employee performed their job duties during the final twelve (12) months of their employment with Sunbelt.

30.     The second non-competition provision of the Employment Agreements is titled Paragraph 5.2.5 and prohibits employees from becoming "employed or engaged by" **any** corporation or other entity that is:

> directly or indirectly engaged in a business in the 'Territory,' . . . which is substantially similar to the Business as conducted at the Designated Stores or competitive with Corporation's Business as conducted at the Designated Stores; provided, however, that nothing herein shall preclude the Employee from (i) engaging in activities or being employed in a capacity that does not actually or potentially compete with Corporation's Business . . . ."

31.     The Employment Agreements state that Sunbelt is engaged in the "Business" of, among other things, "selling and renting equipment, tools, climate control units, scaffolding, oil & gas equipment . . . and parts for use in the manufacturing, industrial and construction industries[.]"

32.     The Employment Agreements also contain two non-solicitation provisions.

33.     The **employee** non-solicitation provision, typically titled Paragraph 5.2.1, requires employees to refrain from, directly or indirectly, participating in the recruitment or hiring of Sunbelt employees on behalf of a competitor.

34.     The **customer** non-solicitation provision, typically titled Paragraph 5.2.2, prohibits employees from, directly or indirectly, participating in the solicitation of any current or prospective Sunbelt clients, or interfering or attempting to interfere with Sunbelt's business relationships that were either formed or furthered during the course of the twelve (12) months immediately preceding the termination or expiration of the employee's employment with Sunbelt.

OMC\4848-1969-4049.v1-3/16/21

35.     The confidentiality provision of the Employment Agreements, typically titled Paragraph 5.1, prohibits employees from "using, divulging, disclosing, furnishing or otherwise making available [Sunbelt's] confidential information to any third person, company or other entity without [Sunbelt]'s prior written consent."  The Agreements define Confidential Information broadly.

## EQUIPMENTSHARE'S HISTORY

36.     Similar to Sunbelt, EquipmentShare is engaged in the highly competitive and specialized business of renting, selling, and servicing construction, industrial, and manufacturing equipment and tools.  Accordingly, Sunbelt and EquipmentShare are direct competitors.

37.     Upon information and belief, EquipmentShare was founded in 2014 with the hope that it would become the "Airbnb of construction" as a result of its "EquipmentShare Track telematics system," which is used to track construction fleets and to gather information about the location and status of the equipment.

38.     Because this model quickly proved unworkable, EquipmentShare, upon information and belief, began opening more regional brick-and-mortar equipment rental operations in or around 2016.

39.     As of the filing of this Complaint, EquipmentShare purports to operate in Alabama, Arizona, Arkansas, California, Colorado, Florida, Georgia, Indiana, Kansas, Kentucky, Louisiana, Maryland, Mississippi, Missouri, Nevada, New Jersey, New Mexico, Oklahoma, Oregon, South Carolina, Texas, Tennessee, Utah, Virginia, Washington, Wisconsin, and New Zealand.  *See* EQUIPMENTSHARE LOCATIONS, https://www.equipmentshare.com/locations (last visited Jan. 26, 2021).

40.     Moreover, upon typing the word "Philadelphia" in the location finder on EquipmentShare's website, the company's new Camden, New Jersey location appears.

41.     EquipmentShare is also currently in the process of expanding into the Northeastern United States, including the Philadelphia area, through its Baltimore, Maryland, as well as its Camden, New Jersey branch location.

42.     In public postings, EquipmentShare has referred to its Baltimore location as its "Northeast region office," and has recently posted a job opening for a "Territory Account Manager" in Philadelphia.

43.     EquipmentShare also has recently posted several job openings associated with its new Camden, New Jersey branch location.

44.     As the above information demonstrates, EquipmentShare is rapidly growing and seeks to penetrate a highly-competitive business and establish itself within the market share.

45.     Notably, however, upon information and belief, EquipmentShare lacks the institutional knowledge to operate and facilitate operations at these physical locations.

46.     Accordingly, in order to penetrate this highly-competitive business and establish itself as a market competitor, EquipmentShare is targeting employees of established equipment rental companies, including Sunbelt, who possess years, and sometimes decades, of experience in the marketplace.

47.     In the last year alone, Sunbelt has initiated litigation against five former Sunbelt employees, who have left Sunbelt and joined EquipmentShare in a manner that violates their Employment Agreements. *See Sunbelt Rentals, Inc. v. Cole Taylor*, No. SU-cv-2020000265 (Ga. Super. Feb. 17, 2020) (the "Taylor Litigation"); *Sunbelt Rentals, Inc. v. Michael Wendt*, No. 20-A-0342305 (Ga. Super. May 13, 2020) (the "Wendt Litigation"); *Sunbelt Rentals, Inc. v. Michael*

*Shifflett*, Civil Action No. 1:20-cv-02222-JMC (D. Md. July 30, 2020) (the "Shifflett Litigation");
*Sunbelt Rentals, Inc. v. Michael Love*, 1:20-cv-17611-RMB-AMD (D.N.J. Dec. 1, 2020) (the
"Love Litigation"); and *Sunbelt Rentals, Inc. v. Robert Gessner*, 2:20-cv-02654 (D. Kan. Dec. 23,
2020) (the "Gessner Litigation").

48.     In addition, equipment rentals company Ahern Rentals Inc. ("Ahern"), a common
competitor of both Sunbelt and EquipmentShare, has initiated a large number of lawsuits against
both its former employees who have joined EquipmentShare, and against EquipmentShare itself.
These matters have been consolidated into a Multi-District Litigation in federal court (the "Ahern
MDL").

49.     In October and November 2020, Ahern Rentals, Inc. ("Ahern"), filed lawsuits
against EquipmentShare, alleging, *inter alia*, patent infringement and violations of the Defend
Trade Secrets Act.  *See generally* Compl., *Ahern Rentals, Inc.*, No. 2:20-cv-00333 (E.D. Tx. Oct.
15, 2020); Compl., *Ahern Rentals, Inc.*, No. 4:20-cv-01565 (E.D. Mo. Nov. 2, 2020).

50.     Specifically, Ahern alleged that, after EquipmentShare faced investor pressure to
rapidly expand, it "engaged in a concerted plan to build brick-and-mortar locations through
targeting Ahern and its employees, who possess decades of experience in the marketplace." Compl.
¶ 21, *Ahern Rentals, Inc.*, No. 2:20-cv-00333 (E.D. Tx. Oct. 15, 2020).

51.     Ahern further stated that "EquipmentShare's tortious plan included making
misleading and defamatory statements about Ahern, poaching Ahern employees, and
misappropriating Ahern's valuable trade secrets [in order to permit] EquipmentShare to grow from
zero physical locations to approximately 50 locations in only a few years."  *Id.*

OMC\4848-1969-4049.v1-3/16/21

52.     The Ahern MDL features disturbing parallels to the litigations that Sunbelt has filed, including employees e-mailing confidential information to themselves before joining EquipmentShare.

## PENDING MATTERS AGAINST EQUIPMENTSHARE EMPLOYEES FORMERLY EMPLOYED BY SUNBELT

53.     Despite multiple communications from Sunbelt's counsel, and the active litigation in which EquipmentShare is a defendant, EquipmentShare continues to aid, abet, encourage, or impermissibly allow former Sunbelt employees to flaunt the non-compete provisions to which they are bound by allowing and encouraging them to compete in a substantially similar line of business within their restricted territories.  This conduct is evident by EquipmentShare's hiring of five employees that Sunbelt has already sued.

### Cole Taylor

54.     During the last 12 months of his employment with Sunbelt, Cole Taylor was a Strategic Account Manager, responsible for a territory that included all of Georgia and parts of Alabama, Mississippi, and South Carolina.  In that role, Mr. Taylor had extensive contacts with industrial customers.

55.     Shortly after his resignation in November 2019, EquipmentShare hired Mr. Taylor to work at a location within his former sales territory for Sunbelt, in violation of his Employment Agreement.

56.     Mr. Taylor was recruited to work for EquipmentShare by a former Sunbelt employee who had joined EquipmentShare.

57.     The former Sunbelt employee who recruited Mr. Taylor previously served as a National Strategic Account Manager for Sunbelt and had, at the inception of his employment with

11

Sunbelt, signed an Employment Agreement containing non-competition, non-solicitation, and non-disclosure provisions.

58.     Accordingly, EquipmentShare knew or should have known that Mr. Taylor was bound by restrictive covenants following his employment with Sunbelt.

59.     Nevertheless, EquipmentShare hired Mr. Taylor in a capacity that violates his contractual obligations to Sunbelt.

60.     On December 2, 2019, Sunbelt sent Mr. Taylor a letter notifying him of his obligations.  Upon information and belief, Mr. Taylor advised other EquipmentShare employees of this letter shortly thereafter, placing the company on notice.

61.     EquipmentShare, however, continued to employ Mr. Taylor in a competitive capacity within his restricted territory.

62.     Accordingly, in February 2020, Sunbelt filed the Taylor Litigation, seeking both monetary and injunctive relief.

63.     Upon receiving a summons from the court, Mr. Taylor immediately informed EquipmentShare's General Counsel, Melissa Null, of the pending litigation.

64.     In November 2020, Sunbelt filed an Amended Verified Complaint in the Taylor Litigation, based on its discovery that Mr. Taylor had apparently removed a company-issued hard drive from his Sunbelt laptop and replaced it with an unformatted and blank hard drive.

65.     In a recent deposition, Mr. Taylor admitted that, in his role with EquipmentShare, he is involved in EquipmentShare's business development.  In fact, Mr. Taylor indicated that he was responsible for starting several "Pump & Power" locations for EquipmentShare—a business line that is directly competitive to Sunbelt.  As a Strategic Account Manager, Mr. Taylor had

contact with industrial customers with needs for industrial pumping solutions, as well as power generation rental.

66.     Upon information and belief, Mr. Taylor's role with EquipmentShare involves the use of Sunbelt's confidential information and trade secrets, which have permitted Sunbelt, for over three decades, to remain a national market leader in the equipment rental industry.

**Michael Wendt**

67.     During the last 12 months of his employment with Sunbelt, Michael Wendt was an Outside Sales Representative for Sunbelt's Power & HVAC Division, where he was responsible for a territory that included all of northern Georgia.

68.     Shortly after his resignation in January of 2020, EquipmentShare hired Mr. Wendt as a Regional Manager of the Pump & Power Division for the Southeast Region, in an area that overlaps his restricted territory under the Employment Agreement and, therefore, violates the Agreement.

69.     Mr. Wendt was recruited by the same former Sunbelt employee who recruited Mr. Taylor.

70.     Accordingly, EquipmentShare knew or should have known that Mr. Wendt was bound by restrictive covenants following his employment with Sunbelt

71.     Despite having either actual or constructive knowledge of the restrictive covenants to which Mr. Wendt would be bound following his employment with Sunbelt, EquipmentShare nevertheless began to employ Mr. Wendt in a capacity that violated his contractual obligations to Sunbelt.

13

72.     On January 31, 2020, Sunbelt sent Mr. Wendt a letter notifying him of his obligations.  Upon information and belief, Mr. Wendt advised other EquipmentShare employees of this letter shortly thereafter, thus placing the company on notice.

73.     EquipmentShare, however, continued to employ Mr. Wendt in a competitive capacity within his restricted territory.

74.     Accordingly, in May 2020, Sunbelt filed the Wendt Litigation, seeking both monetary and injunctive relief.

75.     As part of the Wendt Litigation, Sunbelt has learned that another former Sunbelt employee, Bobby Gessner, is taking over Mr. Wendt's responsibilities.  As described below, Mr. Gessner was a regional employee and had access to national-level trade secrets and confidential information.

76.     Upon information and belief, EquipmentShare substituted Mr. Gessner for Mr. Wendt in order to cover up violations of the agreements on behalf of these former Sunbelt employees, to allow these employees to continue to compete with Sunbelt indirectly in their restricted territories, and/or to utilize Sunbelt's trade secrets and confidential information to strategically develop and grow its business.

**Michael Shifflett**

77.     During the last 12 months of his employment with Sunbelt, Michael Shifflett was a Profit Center Manager in Baltimore, Maryland.

78.     On or about June 8, 2020, Sunbelt terminated Mr. Shifflett's employment for dishonesty, theft, and failure to comply with safety rules and procedures.

79.     Shortly after his termination, EquipmentShare hired Mr. Shifflett to work at its Baltimore, Maryland location.  As this location competes with Sunbelt and is well within 50 miles

14

of Mr. Shifflett's prior Sunbelt PC, Mr. Shifflett's employment with EquipmentShare clearly violates his Employment Agreement with Sunbelt.

80.     On July 10, 2020, Sunbelt sent Mr. Shifflett a letter notifying him of his non-compete, non-solicit, and non-disclosure obligations.  Upon information and belief, Mr. Shifflett advised other EquipmentShare employees of this letter shortly thereafter, thus placing the company on notice.

81.     EquipmentShare, however, continued to employ Mr. Shifflett in a competitive capacity within his restricted territory.

82.     Accordingly, in July 2020, Sunbelt filed the Shifflett Litigation, seeking both monetary and injunctive relief.

83.     On October 16, 2020, Sunbelt obtained a Consent Preliminary Injunction Order restricting Mr. Shifflett from engaging in unlawful solicitation, competition, or from using or divulging Sunbelt's Confidential Information.

**Michael Love**

84.     In August 2018, Sunbelt paid over 200 million dollars to acquire a company named Interstate Aerials, LLC, ("Interstate Aerials")—a leading aerial equipment rental provider headquartered in Paulsboro, New Jersey.

85.     As part of the acquisition, Sunbelt purchased Interstate Aerials' assets, including its books of business, sales and marketing information and data, and other proprietary materials.

86.     As part of the acquisition, Sunbelt hired Michael Love, Interstate Aerials' Vice President of Sales, as a Sales Development Director.

87.     As a Sales Development Director, Love was responsible for transitioning his Interstate Aerials customers, many of whom had operations and rental needs across the United

States, over to Sunbelt.  In furtherance of this role, Mr. Love received various confidential business materials from Sunbelt, including, but not limited to, Sunbelt's pricing and business development information.

88.     On August 17, 2018, Mr. Love signed an Employment Agreement containing broad restrictive covenants, including a 12-month non-compete provision that bars him from becoming employed by any competitor that does business within his restricted "Territory."  Territory was defined broadly to include the 50-mile radius around all Sunbelt locations "in connection with which" Mr. Love was assigned.

89.     During the last 12 months of his employment, from October 2019 to October 2020, Mr. Love continued to transition his former Interstate Aerials customers to Sunbelt.  He also worked with other members of Sunbelt's National Account team, and had expensed business meals and social engagements with customers across the country.  Thus, and by his own admission, Mr. Love had a national role with Sunbelt.

90.     On October 2, 2020, Mr. Love resigned from Sunbelt.  On or about that date, Mr. Love admitted to his supervisor in a text message that he was joining EquipmentShare, and that he would be "building the team that will compete against your [Sunbelt's] National Team."

91.     In late September 2020, shortly before his resignation, Mr. Love e-mailed a large number of Sunbelt's confidential files and trade secrets to both himself (through his personal e-mail) and to a Sunbelt competitor.  Around that same time, Mr. Love e-mailed himself a copy of his resume.

92.     Upon information and belief, Mr. Love transferred Sunbelt's confidential information and trade secrets to his personal email address in anticipation of his defection to, and for use on behalf of, EquipmentShare.

16

93.     Accordingly, on December 1, 2020, Sunbelt filed the Love Litigation and moved for both a temporary restraining order ("TRO") and preliminary injunction to prohibit Mr. Love from working for EquipmentShare during the 12-month restricted period outlined in his Agreement.

94.     Also on December 1, 2020, Sunbelt advised EquipmentShare via e-mail that the Love Litigation had been filed, and provided courtesy copies of the Complaint and Motion.

95.     Despite this notice, EquipmentShare continued to employ Mr. Love in violation of his Agreement.

96.     On December 5, 2020, the Court issued a TRO substantially restricting Mr. Love from engaging in competitive activities on behalf of EquipmentShare.  In response to the TRO, EquipmentShare placed Mr. Love on paid time off but did not terminate his employment.

97.     On January 11, 2021, after a two-day evidentiary hearing, the Court issued a preliminary injunction barring Mr. Love from working for EquipmentShare for 12 months from the date of his resignation, *i.e.*, until October 2, 2021.

98.     In the opinion accompanying the ruling, the Court held that Paragraph 5.2.5 of Mr. Love's Agreement prohibited him from working for EquipmentShare, and that a national restriction on competition was appropriate because of Mr. Love's national role with Sunbelt.

99.     Upon information and belief, EquipmentShare was aware of Mr. Love's contractual obligations to Sunbelt, including Paragraph 5.2.5, at the time it hired him in and around October of 2020.

100.    Upon information and belief, at the time it hired Mr. Love, EquipmentShare was also aware of the fact that Mr. Love had national job responsibilities for Sunbelt.  In fact, during

OMC\4848-1969-4049.v1-3/16/21

the evidentiary hearing in the Love Litigation, Mr. Love never contested that he had a national role for Sunbelt.

101.    Despite this, EquipmentShare continued to employ Mr. Love until it received notice of the Court's January 11, 202, Order preliminary enjoining Mr. Love from working for EquipmentShare.

**Robert "Bobby" Gessner**

102.    In the 10 months preceding his resignation, Mr. Gessner served as the Regional Manager for Power & HVAC for Sunbelt in the Midwest.

103.    In this role, Mr. Gessner was responsible for a large territory, including at least 16 Profit Centers in 11 states.

104.    Similar to Mr. Love, Mr. Gessner frequently met and interacted with national-level Sunbelt employees and managers, and had access to national-level confidential information and trade secrets regarding Sunbelt's Power & HVAC business.

105.    In the months leading to his resignation, Mr. Gessner, like Mr. Love, e-mailed several batches of Sunbelt confidential information and trade secrets to his personal e-mail.

106.    The information Mr. Gessner pilfered from Sunbelt was not limited only to the Midwest region, but contained pricing information that gives Sunbelt a competitive advantage across the entire United States.

107.    At around this same time, Mr. Gessner, like Mr. Love, e-mailed himself a copy of his resume.

108.    On October 15, 2020, Mr. Gessner informed Sunbelt that he was resigning to join EquipmentShare as a Regional Manager.

OMC\4848-1969-4049.v1-3/16/21

109.     Shortly after his employment with EquipmentShare began, Mr. Gessner assumed Mr. Wendt's responsibilities as a Regional Manager for EquipmentShare's Pump & Power Division.

110.     Upon information and belief, Mr. Gessner transferred Sunbelt's confidential information and trade secrets to his personal email address in anticipation of his defection to, and for use on behalf of, EquipmentShare.

111.     Moreover, like Mr. Love, Mr. Gessner was subject to restrictive covenants for one year following his resignation from Sunbelt.

112.     In particular, Mr. Gessner, like Mr. Love and other former Sunbelt employees, was subject to the strictures of Paragraph 5.2.5, which prohibits former Sunbelt employees, for one year following their resignation from the Corporation, from becoming employed by any Sunbelt competitor that competes with Sunbelt within approximately 50 miles of the former employee's "Territory."

113.     On November 18, 2020, Sunbelt's counsel notified both Mr. Gessner and EquipmentShare by letter that Mr. Gessner's employment with the company violated Paragraph 5.2.5 of Mr. Gessner's Agreement with Sunbelt.

114.     Despite this notice, EquipmentShare continued to employ Mr. Gessner in violation of Paragraph 5.2.5 of the Agreement.

115.     Accordingly, in December 2020, Sunbelt filed the Gessner Litigation, seeking both monetary and injunctive relief.  Similar to the claims against Mr. Love, the Gessner Litigation includes both a breach of contract cause of action based on Paragraph 5.2.5 of the Agreement, and also a claim for misappropriation of trade secrets under both state and federal law.

OMC\4848-1969-4049.v1-3/16/21

116.    After obtaining the Preliminary Injunction against Mr. Love on these same grounds on January 11, 2021, Sunbelt's counsel provided EquipmentShare with a copy of the court's Order and Opinion and asked whether EquipmentShare would honor Mr. Gessner's Agreement and cease employing him during his 12-month restricted period.

117.    Even after being placed on notice of the Injunction Order in the Love Litigation, EquipmentShare has refused to stop employing Mr. Gessner.

## ADDITIONAL EVIDENCE OF EQUIPMENTSHARE'S TARGETED INTERFERENCE IN SOUTHERN NEW JERSEY

118.    Sunbelt recently has learned that Mr. Love, in his capacity as an EquipmentShare employee, previously advised his colleagues at EquipmentShare that he intended to hire a large number of former Interstate Aerials employees on behalf of EquipmentShare.

119.    For context, since the inception of the Love Litigation, Mr. Love claimed that his non-compete agreement was limited to the 50-mile radius around Paulsboro, New Jersey.

120.    Given the regular communications between Sunbelt's counsel and EquipmentShare related to this litigation, EquipmentShare was on notice of the nature of Mr. Love's position.

121.    Indeed, presumably in reliance on Mr. Love's position that he was not precluded from competing against Sunbelt outside of the Paulsboro area, EquipmentShare continued to employ Mr. Love, at least until this Court issued a TRO, on the basis that Mr. Love's employment with EquipmentShare did not violate this interpretation of the Agreement.

122.    Notwithstanding this position, however, EquipmentShare permitted and, upon information and belief, encouraged Mr. Love to compete against Sunbelt within 50-miles of the Paulsboro location, either directly or indirectly through other EquipmentShare employees.

123.    Specifically, upon information and belief, since the inception of the Love Litigation, EquipmentShare had been coordinating with Mr. Love and other EquipmentShare workers to open

an EquipmentShare location in Camden, New Jersey, at an address that is well within a 50-mile radius of the Paulsboro location.

124.    Upon information and belief, Mr. Love, in his capacity as an EquipmentShare employee, advised his colleagues that he was taking steps in furtherance of opening a new EquipmentShare location at a former bus depot location on Admiral Wilson Boulevard in Camden, New Jersey—10 miles from Interstate Aerials' former headquarters in Paulsboro, New Jersey and within the restricted "Territory" of multiple Sunbelt employees who were hired as part of the Interstate Aerials acquisition.

125.    In or around January 2021, EquipmentShare updated its website to list a new location at 1521 Admiral Wilson Boulevard, Camden, New Jersey 08105.

126.    According to the property owner, EquipmentShare has been renting space at this site since early January 2021.

127.    Furthermore, EquipmentShare vehicles and equipment can be seen at this location.

128.    EquipmentShare's new Camden location competes with several Sunbelt locations in the area, including its General Tool & Equipment PC (#171) and Pump Solution PC (#172) in Maple Shade Township, New Jersey, its General Tool & Equipment PC (#183) in Philadelphia, Pennsylvania, and its Aerial Work Equipment PC (#1092) in Paulsboro, New Jersey (formerly Interstate Aerials's headquarters).

129.    The revenue Sunbelt received from these PCs from 2019 to 2020 amounts to [AMOUNT].

130.    In light of the evidence Sunbelt has recently acquired, Sunbelt has reason to believe that EquipmentShare hired Mr. Love with the intent of competing with Sunbelt in New Jersey, either directly or indirectly, and to steal the customer relationships Sunbelt purchased from Mr.

21

Love and sought to protect through valid and binding restrictive covenants, in further violation of the Agreements.

131.    In addition, EquipmentShare recently hired Vincent Ficarotta, another former Sunbelt employee in New Jersey who was originally hired as part of Sunbelt's acquisition of Interstate Aerials.

132.    EquipmentShare also recently hired James Delnero, another former Sunbelt employee in New Jersey.

133.    Mr. Ficarotta and Mr. Delnero worked closely together at Sunbelt.

134.    Mr. Ficarotta and Mr. Delnero have both claimed that they have been assigned to EquipmentShare's Baltimore, Maryland location.  Upon information and belief, that location has serviced, or is currently servicing the Philadelphia market, which falls within both of their restricted territories.

135.    Upon information and belief, therefore, EquipmentShare has directed and/or permitted the individuals it hired from Sunbelt to help it establish a competitive presence in the Philadelphia and Southern New Jersey markets, in knowing violation of their Employment Agreements.

136.    In sum, upon information and belief, when EquipmentShare was unable to gain an advantage over Sunbelt and its other competitors through ordinary competition, EquipmentShare began to hire Sunbelt's employees in order to gain access to and utilize Sunbelt's confidential information and trade secrets to build its business.

137.    Moreover, in light of Mr. Gessner's assumption of Mr. Wendt's responsibilities as the Regional Manager of EquipmentShare's Pump & Power Division, EquipmentShare has, upon information and belief, begun shifting the nominal responsibilities of the Sunbelt employees who

22

are in violation of their Employment Agreements in an attempt to conceal one or more violations and/or facilitate indirect competition within these employees' restricted territories through others.

138. Notably, as the Ahern MDL and related cases demonstrate, Sunbelt is not the first competitive equipment rental company that EquipmentShare has targeted in this way.

## COUNT I—TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

139. Sunbelt incorporates by reference the allegations contained in each of the foregoing paragraphs as if fully set forth herein.

140. EquipmentShare intentionally and maliciously engaged in acts intended or designed to disrupt Sunbelt's contractual relationships by, among other things, encouraging, aiding, abetting, or permitting former Sunbelt employees to work in positions that violate or violated their contractual obligations to Sunbelt.

141. Sunbelt had valid and existing contracts with each of its former employees, namely, the Employment Agreements, which contain the non-competition, non-solicitation, and confidential information provisions detailed above.

142. Despite having knowledge of the Employment Agreements and their contents, EquipmentShare has induced and/or facilitated the former employees to breach their Employment Agreements by, among other things, employing them in capacities that violate the provisions contained in the Employment Agreements.

143. Upon information and belief, EquipmentShare tortiously interfered with at least one New Jersey contract, which EquipmentShare knew or should have known contained a New Jersey choice-of-law provision.

OMC\4848-1969-4049.v1-3/16/21

144. Moreover, upon information and belief, EquipmentShare's act of opening a new location in New Jersey was orchestrated by former Sunbelt employees who were permitted and encouraged by EquipmentShare to act in violation of their contractual obligations to Sunbelt.

145. Thus, not only did EquipmentShare tortiously interfere with at least one contract in New Jersey, but EquipmentShare's tortious interference also was directed towards doing business in New Jersey.

146. Indeed, upon information and belief, EquipmentShare recruited at least Mr. Love to, among other things, increase EquipmentShare's business in New Jersey.

147. Upon information and belief, EquipmentShare was aware of each employee's obligations at or near the time of their hire.

148. In addition, Sunbelt reminded EquipmentShare and its former employees of the employees' continuing contractual obligations to Sunbelt.

149. After being placed on notice of these obligations, EquipmentShare continued to direct and/or allow Sunbelt employees to violate their contractual obligations with Sunbelt.

150. EquipmentShare's conduct resulted in actual disruption of the contracts.

151. EquipmentShare's conduct was not justified and is not justifiable.

152. EquipmentShare's conduct was wantonly reckless or malicious.

153. As a result of EquipmentShare's conduct, Sunbelt suffered, and is entitled to recover, compensatory and punitive damages in an amount that exceeds $75,000, to be proven at trial.

OMC\4848-1969-4049.v1-3/16/21

## PRAYER FOR RELIEF

**WHEREFORE**, Sunbelt prays for and respectfully requests judgment in Sunbelt's favor:

A.       Ordering a final judgment finding that EquipmentShare has tortiously interfered with the Employment Agreements of former Sunbelt employees;

B.       Awarding Sunbelt compensatory and punitive damages against EquipmentShare;

C.       Awarding Sunbelt its attorneys' fees, costs, and other expenses incurred in enforcing its rights;

D.       Awarding Sunbelt compensatory, special, consequential, exemplary, and punitive damages in an amount to be determined;

E.       Awarding Sunbelt interest; and

F.       Such other and further relief as the Court deems just and proper.


Respectfully submitted,

Dated:  March 24, 2021                  **Obermayer Rebmann Maxwell & Hippel LLC**

                                        _/s/ Matthew Green_____

                                        By:   Matthew Green, Esq. (03228-2003)
                                              Ivo Becica, Esq. (01240-2007)
                                              1120 Route 73, Suite 420
                                              Mount Laurel, New Jersey 08054
                                              (856) 857-1413
                                              matthew.green@obermayer.com
                                              ivo.becica@obermayer.com
                                              _Attorneys for Plaintiff, Sunbelt
                                              Rentals, Inc._

OMC\4848-1969-4049.v1-3/16/21

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

I, Matthew Green, Esquire, declare under penalty of perjury that the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.


Executed on:  March 24, 2021                                    */s/ Matthew Green*_____
                                                               Matthew Green, Esq.

OMC\4848-1969-4049.v1-3/16/21

## VERIFICATION

I, Russ Brown, verify that I am an Executive Vice President at Sunbelt Rentals, Inc., Plaintiff in this proceeding, and that, based on my personal knowledge and my review of Sunbelt documents and information, the facts set forth in the attached pleading are true and correct to the best of my knowledge, information, and belief, except (1) where expressly stated to be based upon information and belief, in which case, I believe them to be true, and (2) legal conclusions, for which I expressly defer to Plaintiff's counsel. I understand that false statements herein are subject to the penalties of 20 U.S.C. § 1746 relating to sworn declarations to authorities.

_____

Russ Brown
Executive Vice President
Sunbelt Rentals, Inc.

Dated: March 24, 2021

27